THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CONNIE K. LEYENDECKER, Defendant-Appellee.

Second District    No. 2—01—0674

Opinion filed April 3, 2003.

CALLUM, J., dissenting.

Glen R. Weber, State's Attorney, of Galena (Robert J. Biderman and Kathy Shepard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Following a traffic stop, defendant, Connie K. Leyendecker, was charged with the offense of driving while her license was suspended (625 ILCS 5/6—303(a) (West 2000)). She moved to suppress the fruits

of the stop, arguing that the police did not have a reasonable suspicion that she had committed a traffic offense prior to stopping her vehicle. The trial court granted that motion, and the State appeals. We affirm.

At the hearing on defendant's motion, the only witness was Keith Brandel, a Jo Daviess County deputy sheriff. On defendant's direct examination, Brandel testified that on October 6, 2000, at approximately 2:40 p.m., he was on stationary patrol observing traffic on U.S. Route 20 near the bottom of what is known locally as "Sand Hill." The highway was a two-lane, two-way roadway, and the eastbound lane had a white fog line on the right side. Brandel observed defendant's vehicle pass his location traveling eastbound on Route 20. Brandel followed defendant's vehicle at an interval of three to four car lengths for a distance of approximately two miles. As defendant maneuvered her vehicle through a curve to the left, Brandel observed defendant's vehicle cross the fog line. Brandel estimated that defendant's vehicle crossed the fog line by a width of one foot. Brandel testified that the speed limit on this stretch of the highway was 65 miles per hour. Brandel also testified that the road had many curves and that it had "poor visibility around the curves."

Brandel testified that after he stopped defendant he "told her the reason why [he] had stopped her." Brandel testified that he recognized defendant from a previous encounter when she had been involved in "a domestic situation." Brandel asked defendant whether she had a driver's license, and she replied that it was suspended. After issuing defendant a ticket for driving while her license was suspended, Brandel asked defendant the whereabouts of Tony Peacock. Peacock was defendant's boyfriend or ex-boyfriend, and he was "wanted on a warrant."

On cross-examination, Brandel described defendant's crossing of the fog line as "single" and "momentary." Brandel testified that he had observed no obstructions on the roadway that would have caused defendant to cross the fog line. Brandel claimed that he stopped defendant only because her vehicle crossed the line. Brandel denied that the stop had anything to do with Peacock's whereabouts. The record contains no traffic citation for defendant's alleged crossing of the fog line.

The trial court entered a written order granting defendant's motion to suppress. In its order, the trial court made several factual findings. The trial court found that Brandel was on stationary patrol observing traffic on U.S. Route 20 near the bottom of "what is known locally as 'Sand Hill.'" The trial court found that Brandel observed defendant's vehicle pass his location traveling eastbound ascending "Sand Hill" into "curves and hilly territory." The trial court found

that Brandel "briefly" crossed the fog line by a distance of one foot as she drove through "a curve to the left."

Based on these factual findings, the trial court explained its ruling as follows:

"[I]t is *not* reasonable for a policeman to effect a traffic stop of a motorist for a single, brief crossing of a lane 'fog line' on the hilly and curvy eastbound lanes of Highway Number 20. This was mid-afternoon (not early morning) and no erratic driving of any kind was observed. A policeman must have more than mere suspicion or a hunch to exercise his authority to intrude on a motorist who is presenting absolutely nothing in the way of dangerous or menacing or illegal conduct. This officer may have had other reasons to effect the traffic stop in this instance, but the record is silent as to any other than the single, brief crossing of the 'fog line,' described in his testimony." (Emphasis in original.)

In denying the State's motion for reconsideration, the trial court stated that crossing a fog line "is not a traffic violation *per se.*" The State timely appeals.

■ In general, a trial court's ultimate determination regarding the legality of a traffic stop is subject to *de novo* review. *People v. Perez*, 288 Ill. App. 3d 1037, 1043 (1997). However, a trial court's determination concerning factual matters, including the reasonable inferences to be drawn from the witnesses' testimony, is entitled to deference by the reviewing court. *Perez*, 288 Ill. App. 3d at 1043. The United States Supreme Court has described our standard of review in these cases as follows:

"[D]eterminations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *** [However,] a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996).

■ A traffic stop requires reasonable suspicion that the vehicle or occupant is subject to seizure for a violation of law. *People v. Rush*, 319 Ill. App. 3d 34, 39 (2001). An officer may make a valid investigatory stop provided the officer's decision is based upon specific and articulable facts and reasonable inferences therefrom that warrant the investigative intrusion. *Village of Lincolnshire v. DiSpirito,* 195 Ill. App. 3d 859, 863 (1990). A mere suspicion or hunch is insufficient. *Rush*, 319 Ill. App. 3d at 39. The officer must have knowledge of specific, articulable facts which, when combined with the rational inferences from them, create a reasonable suspicion that the person in question has committed or is about to commit a crime. *DiSpirito*, 195

Ill. App. 3d at 863. We review the propriety of a traffic stop using an objective standard: whether the facts available to the officer would warrant a reasonable person to believe that the action that the officer took was appropriate. *DiSpirito*, 195 Ill. App. 3d at 863.

■ On appeal, the State argues that defendant's crossing of the fog line gave Brandel a reasonable suspicion that defendant had violated section 11—709(a) of the Illinois Vehicle Code (the Code) (625 ILCS 5/11—709(a) (West 2000)). The State asserts that even a single, momentary crossing of a fog line constitutes a violation of section 11—709(a) and that the stop was therefore valid. Section 11—709(a) provides:

> "Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules *** shall apply.
>
> (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11—709(a) (West 2000).

The Illinois Supreme Court has construed this provision as establishing two separate and distinct requirements for lane usage. See *People v. Smith*, 172 Ill. 2d 289, 296-97 (1996). First, the statute requires a motorist to drive a vehicle as nearly as practicable entirely within one lane. *Smith*, 172 Ill. 2d at 297. Second, a motorist may not move a vehicle from a lane of traffic until the motorist has determined that the movement can be safely made. *Smith*, 172 Ill. 2d at 297. Our supreme court has held that a motorist violates section 11—709(a) when the motorist "crosses over a lane line and is not driving as nearly as practicable within one lane." *Smith*, 172 Ill. 2d at 297.

Therefore, the inquiry in this case is whether Brandel had a reasonable suspicion that (1) defendant had crossed over a lane line, *and* (2) defendant was not driving as nearly as practicable within one lane. *Smith*, 172 Ill. 2d at 297. The evidence introduced at the hearing indicated that defendant's vehicle momentarily crossed the fog line. However, Brandel failed to testify whether he believed that defendant was driving "as nearly as practicable" within one lane at the time she momentarily crossed the fog line. Although Brandel testified that he did not believe that "[defendant] swerved for a reason," Brandel acknowledged that defendant crossed the fog line as she was maneuvering her vehicle through a roadway curve to the left. Brandel testified that the road in this area had "curves" and that the road had "poor visibility around the curves." The speed limit in the area where defendant was driving was 65 miles per hour. Other than defendant's momentary crossing of the fog line, Brandel testified that defendant had driven properly during the two miles that he followed her vehicle.

■ Based upon this evidence, the trial court concluded that Brandel could not have reasonably suspected that defendant had violated section 11—709(a) prior to stopping her. Although we review the question of "reasonable suspicion" *de novo*, we must give "due weight to inferences drawn from [the] facts by resident judges." *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663. Here, as is evident from his ruling, the trial judge was familiar with the roadway conditions on U.S. Route 20 where Brandel stopped defendant, and we must give considerable weight to the inferences that the trial court drew from Brandel's description of the area in question. The trial court found that, given the curvy and hilly roadway conditions, Brandel did not have a valid basis to effectuate a traffic stop.

Based on the record before us, we conclude that Brandel did not have a reasonable suspicion that defendant had violated section 11—709(a) of the Code prior to stopping her vehicle. Defendant's momentary one-foot crossing of the fog line as she maneuvered her vehicle through a left-hand curve on a hilly road with poor visibility would not cause a reasonable person to suspect that defendant was not driving "as nearly as practicable" within her lane. 625 ILCS 5/11—709(a) (West 2000). As noted above, Brandel followed defendant for approximately two miles and did not observe anything other than defendant exhibiting proper driving skills. *Cf. Smith*, 172 Ill. 2d at 293 (police officer had reasonable suspicion to stop the defendant for violation of section 11—709(a) where the defendant weaved across the center line for 150 yards and then weaved across the fog line for 150 yards). Indeed, the record does not contain a traffic citation for defendant's alleged violation of section 11—709(a). Deferring to the trial court's knowledge of the roadway in question, and coupled with the evidence presented, we hold that Brandel did not have a reasonable suspicion that defendant had violated section 11—709(a) of the Code.

In so holding, we find the authorities relied upon by the State distinguishable from the case at bar. In *United States v. Fiala*, 929 F.2d 285, 286 (7th Cir. 1991), the reviewing court held that police had reasonable suspicion to stop the defendant after observing her vehicle cross the fog line by half the width of her vehicle for a considerable period of time. Given the other relevant factors involved, the conduct at issue in *Fiala* is not comparable to defendant's momentary crossing of the fog line in this case. We also note that the *Fiala* court did not indicate whether the defendant in that case was maneuvering through hilly and curvy roadway with poor visibility at the time she crossed the fog line.

The State's remaining authorities concern a motorist's crossing of

the yellow center line as opposed to the crossing of the fog line. See *Rush*, 319 Ill. App. 3d at 36 (defendant crossed the center line twice and the fog line once); *Perez*, 288 Ill. App. 3d at 1040 (defendant crossed center lane several times with half of the vehicle's width); *DiSpirito*, 195 Ill. App. 3d at 861 (defendant drove his entire vehicle across the center lane for a distance of 100 feet). These cases consider whether police had reasonable suspicion to believe that motorists violated section 11—701(a) of the Code (625 ILCS 5/11—701(a) (West 2000)), which requires a motorist to stay to the right of the center line. As the statutory provisions of section 11—701(a) of the Code do not pertain to the crossing of fog lines, we find that these authorities are inapposite to the situation presented in this case.

Rather, for the reasons discussed above, we hold that the trial court properly granted defendant's motion to suppress. Accordingly, we affirm the judgment of the circuit court of Jo Daviess County.

Affirmed.

McLAREN, J., concurs.

JUSTICE CALLUM, dissenting:

By its plain terms, section 11—709(a) requires a motorist to "drive a vehicle as nearly as practicable entirely within one lane." *Smith*, 172 Ill. 2d at 297. The majority appears to concede that, although she made only a single, momentary crossing of the fog line, defendant did not drive entirely within one lane. However, the majority determines that, because the road was hilly and curvy and had "poor visibility around the curves," Brandel could not have reasonably suspected that defendant did not drive "as nearly as practicable" entirely within one lane. 625 ILCS 5/11—709(a) (West 2000). I disagree with that conclusion, as the road's hilliness or curviness did not make it *impracticable* to drive entirely within one lane. Thus, I respectfully dissent.

In my view, the majority disregards the plain language of section 11—709(a). See *People v. Woodard*, 175 Ill. 2d 435, 443 (1997) (a "court is not free to depart from the plain language and meaning of [a] statute"). What is "practicable" is what "may be done, practiced, or accomplished; that which is performable, feasible, [or] possible." Black's Law Dictionary 1172 (6th ed. 1990). Thus, the crucial issue is whether defendant crossed the fog line when she *possibly* could have driven entirely within the lane. If so, then defendant did not drive "as nearly as practicable" entirely within the lane. 625 ILCS 5/11—709(a) (West 2000).

Had defendant crossed the fog line to avoid an obstruction in the

lane, such as a boulder or a deer, I would quickly hold that she drove "as nearly as practicable" entirely within the lane. 625 ILCS 5/11—709(a) (West 2000). Such is not the case. Instead, defendant crossed the fog line merely because the road was hilly and curvy and had "poor visibility around the curves." I might concede that those conditions rendered more *difficult* the task of driving entirely within the lane. However, they clearly did not make the task *impossible*. Indeed, to drive entirely within the lane, all defendant had to do was drive more carefully.

Thus, I would hold that Brandel reasonably suspected that defendant did not drive "as nearly as practicable" entirely within one lane. 625 ILCS 5/11—709(a) (West 2000). Accordingly, I would validate the traffic stop, reverse the trial court's grant of defendant's motion to suppress, and remand the cause.