THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES S. FEDDOR, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES S. FEDDOR, Defendant-Appellee.

Second District   Nos. 2—03—0825, 2—04—0217 cons.

Opinion filed February 2, 2005.

326

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Christopher B. Klis, of Ramsell & Armamentos, of Wheaton, for appellee.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

On April 24, 2003, the defendant, James Feddor, was charged by criminal complaint with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 2002)), and his driving privileges were suspended. The defendant subsequently filed a petition to rescind the statutory summary suspension of his driving privileges and a motion to suppress certain evidence against him. Following separate hearings, the trial court granted both the defendant's petition to rescind his summary suspension and his motion to suppress evidence. The State filed a certificate of impairment and appeals from both of these orders. We affirm.

On May 27, 2003, Judge Elizabeth Sexton conducted a hearing on the defendant's petition to rescind his summary suspension. Officer Matthew Conway of the Bartlett police department testified that on April 24, 2003, he responded to a call regarding a hit-and-run accident near a golf course. One of the vehicles involved in the accident had left the scene and was being followed by a witness. The witness reported that the vehicle had "heavy front end damage" and that the hood was folded up over the windshield. The vehicle's driver was hanging out of the vehicle as he drove. The driver drove to 1339 Deerfield Lane in Bartlett, where he pulled into the garage and closed the garage door. The distance between this house and where the accident had occurred was approximately one-quarter of a mile. Officer Conway testified that the vehicle involved in the accident, as well as the residence where the vehicle had been driven to, were both registered to the defendant.

Officer Conway further testified that both he and Officer Gary Mitchell of the Bartlett police department knocked on the defendant's door and rang the doorbell in order to locate someone at the residence. However, there was no response. About 10 minutes later, Sergeant Joseph Leonas of the Bartlett police department arrived. After the three officers conferred, Sergeant Leonas contacted the Bartlett fire department. The Bartlett fire department responded with a fire truck and an ambulance and ultimately forced entry into the residence. After entering the residence, the police arrested the defendant for DUI.

Sergeant Joseph Leonas testified that, upon arriving at the defendant's residence, he pounded on the defendant's door over the course of a 20- to 30-minute period. He also tried to open the garage door as well as all of the other doors of the residence. All of the doors were locked. The only response they heard was a dog barking.

Sergeant Leonas testified that he instructed Officers Conway and Mitchell to canvass the neighborhood in order to find a phone number

for the residence. After those efforts were unsuccessful, it was decided that the fire department would be contacted in order to make a possible entry into the residence. After the fire department arrived, Sergeant Leonas told them that the person inside might be injured, but he did not know. Sergeant Leonas testified that he believed the defendant may have been injured due to the severity of the accident he had been involved in. However, Sergeant Leonas did not know whether the defendant was injured or not. Sergeant Leonas also testified that he had not been able to consult with the witness at the scene as to whether the defendant had been injured. Upon entering the residence, Sergeant Leonas testified that he had the paramedics immediately assess the defendant's condition. He testified that the defendant appeared to be intoxicated but otherwise was fine.

Officer Mitchell testified that he canvassed the neighborhood to see if someone could help the police make contact with the defendant. He talked with several neighbors, but none of them knew the defendant well or could provide the required information.

Glenn Sarwas, a neighbor of the defendant's, testified that he was contacted by Officer Mitchell regarding the incident at issue. Officer Mitchell asked him whether the defendant plays golf. Sarwas indicated that the defendant did golf. Sarwas asked the officer whether there was a problem. Officer Mitchell indicated that there was not a problem but that the police just wanted to talk to the defendant. Sarwas testified that the officer did not express any concerns to him regarding the defendant's safety or well-being. Sarwas further testified that he observed one of the police officers trying to open the defendant's garage door before Officer Mitchell came over to talk to him.

At the close of the hearing, Judge Sexton granted the defendant's motion to rescind his summary suspension. The trial court first explained that the instant case was similar to *People v. Krueger*, 208 Ill. App. 3d 897 (1991). The trial court further explained that the witness in the instant case who had followed the defendant had not indicated that there were any problems with the defendant's driving. The witness did not observe the defendant having any problems getting out of the car. The defendant did not appear to be injured. There was no blood found near the defendant's residence. The trial court placed particular importance on Sarwas's testimony that the police did not indicate that they were concerned about the defendant's health but rather wanted to know if he golfed. The trial court also noted that the police were trying to enter the residence before they called the paramedics. Based on this evidence, the trial court found that the police should have obtained a search warrant before they entered the defendant's residence. Following the denial of its motion to reconsider,

the State filed a timely notice of appeal. The State's appeal was docketed in this court as number 2—03—0825.

On September 9, 2003, Judge Kenneth Torluemke conducted a hearing on the defendant's motion to suppress evidence. Sarwas and the police officers who had testified at the hearing on the petition to rescind the statutory suspension testified substantially the same as they had at the earlier hearing. On February 9, 2004, the trial court granted the defendant's motion to suppress evidence. Judge Torluemke also found that the case was similar to *People v. Krueger* and found that the emergency exception did not apply to the police's entry of the defendant's residence without a search warrant. The trial court found that the totality of the circumstances indicated that the officers entered the defendant's residence not out of concern for the defendant's health but rather because they wanted to apprehend the defendant for having fled the scene of an accident.

Following the trial court's ruling, the State filed a certificate of impairment pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)) and a timely notice of appeal. The State's appeal was docketed in this court as number 2—04—0217. On April 6, 2004, this court granted the defendant's motion to consolidate appeal numbers 2—03—0825 and 2—04—0217.

On appeal, the State argues that the trial court erred in granting the defendant's petition to rescind his statutory suspension and his motion to suppress evidence. Specifically, the State contends that the trial court erred in finding that the police were not justified in entering the defendant's house based on their concerns that he may be injured.

■ A hearing on a petition to rescind the statutory suspension of driving privileges is a civil proceeding. The petitioner has the burden of providing a *prima facie* case for the rescission. *People v. Rozela*, 345 Ill. App. 3d 217, 222 (2003). The burden then shifts to the prosecution to present evidence justifying the suspension. *People v. Smith*, 172 Ill. 2d 289, 294-95 (1996). A petitioner may establish that the statutory suspension should be rescinded if his driving privileges were suspended pursuant to an invalid arrest. *Krueger*, 208 Ill. App. 3d at 903-04. A warrantless in-home arrest, which is presumptively unreasonable, is considered invalid unless it is justified by the exigencies of a particular case. *Krueger*, 208 Ill. App. 3d at 907. One such exigency is that the police may make a warrantless entry into a residence when they reasonably believe that the person within is in need of immediate aid. *Krueger*, 208 Ill. App. 3d at 907-08. The requirements of this "emergency exception" are that (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immedi-

ate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *People v. Bondi,* 130 Ill. App. 3d 536, 539 (1984).

In weighing the evidence before it on a petition to rescind a statutory suspension, the trial court is charged with assessing the credibility of the witnesses and the weight to be given their testimony. Generally, the trial court's decision will not be disturbed unless the decision is against the manifest weight of the evidence. *Smith,* 172 Ill. 2d at 295. A finding is against the manifest weight of the evidence where an opposite conclusion is clearly evident from the record. *People v. Hood,* 265 Ill. App. 3d 232, 241 (1994).

We agree with the trial court that this case is analogous to *Krueger.* In *Krueger,* the police suspected that the defendant had damaged several mailboxes while driving intoxicated. The police went to the defendant's home to investigate. The defendant did not respond to the police knocking on his door. A neighbor of the defendant's heard the noise that the police were making and went to talk with the police. After the police told her that the defendant had been in a car accident and that they wanted to talk with him, the neighbor let herself into the defendant's home. The neighbor returned and told the police that the defendant had vomit on him and that she was unable to wake him. However, the neighbor believed that the defendant was "fine." One of the police officers then insisted that the neighbor let them into the house so that they could check on the defendant's well-being. The neighbor then let them into the house. After checking the defendant's pulse and monitoring his breathing, the police awoke the defendant. They then questioned him about the alleged car accident. After the defendant made some inculpatory statements, the police arrested him. The defendant was subsequently charged with DUI and his driving privileges were suspended. *Krueger,* 208 Ill. App. 3d at 899-902.

The defendant thereafter filed a petition to rescind his statutory suspension, arguing that his arrest was illegal because it followed a warrantless entry into his home. The trial court found that the defendant had been illegally arrested but nonetheless upheld his statutory suspension. The trial court explained that to grant rescission because the arrest of the defendant was illegal would amount to the improper application of the exclusionary rule to a civil proceeding. *Krueger,* 208 Ill. App. 3d at 903. On appeal, this court reversed. *Krueger,* 208 Ill. App. 3d at 910. We held that the arrest underlying a statutory suspension must be lawful and valid. *Krueger,* 208 Ill. App.

3d at 904. We further held that the arrest of the defendant was not valid. *Krueger*, 208 Ill. App. 3d at 908-09. We explained that the State did not meet its "heavy burden" in showing that the case fell within the "emergency exception" to the rule requiring the police to have either consent or a warrant before entering a residence. *Krueger*, 208 Ill. App. 3d at 908. At the time of entering the defendant's residence, the police knew only that he had returned home from a car accident, was upstairs sleeping, and had been described by a neighbor as "fine." We therefore found that the police had no reasonable grounds to believe that the defendant required their immediate assistance to safeguard his physical well-being. *Krueger*, 208 Ill. App. 3d at 908. We additionally found that the State did not meet its burden in showing that the entry was not motivated primarily by the intent to investigate or seize evidence in connection with the possible DUI offense. *Krueger*, 208 Ill. App. 3d at 908-09. We noted that there was nothing in the record to indicate that the police sought to provide medical assistance for the defendant's possible injuries. *Krueger*, 208 Ill. App. 3d at 909. Finally, we found that the officers' postentry conduct was not limited to achieving the objective justifying the entry. *Krueger*, 208 Ill. App. 3d at 909.

■ In the instant case, as in *Krueger*, the police entered the defendant's home without either the defendant's consent or a warrant. The State claims, as in *Krueger*, that this entry was nonetheless proper under the "emergency exception" because the police were concerned about the defendant's health. We disagree. At the time the police entered the defendant's residence, they knew only that (1) he had been in a car accident and had returned to his home; (2) the witness who had followed him did not observe anything physically wrong with the defendant; and (3) the defendant was not answering his door but his dog was barking. Sergeant Leonas acknowledged that he did not know whether the defendant was injured. As such, these minimal facts were not enough to show that the police had reasonable grounds to believe that there was an emergency at hand and an immediate need for their assistance. Indeed, these facts are even less suggestive than those in *Krueger* as to whether the defendant required assistance. In *Krueger*, the police learned from the defendant's neighbor that he had vomited in his room. Conversely, the defendant herein left no physical signs that he was sick or injured.

We also cannot say that the State met its burden in establishing that the police's entry into the residence was not based primarily by an intent to arrest and seize evidence. This is particularly apparent based on the testimony of the defendant's neighbor, Glenn Sarwas, who testified that the police did not convey to him a concern about the

defendant's health but rather inquired if the defendant golfed. Such a question indicated that the police were primarily concerned with investigating the car accident the defendant had allegedly been in and the accident's proximity to a golf course. Although several police officers testified that they were concerned about the defendant's well-being, the trial court was free to place greater weight on Sarwas's testimony. See *Smith*, 172 Ill. 2d at 295 (determinations as to credibility of witnesses lies within the sole discretion of the trial court). Accordingly, because the summary suspension of the defendant's driver's license was not based on a lawful and valid arrest, the trial court properly rescinded the suspension of the defendant's driver's license.

■ We next address whether the trial court properly suppressed the evidence that was obtained from the defendant following his arrest. When reviewing a ruling on a motion to suppress, our standard of review is generally twofold. We accord great deference to the trial court's factual findings and credibility determinations and reverse those conclusions only if they are against the manifest weight of the evidence. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003); *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). After reviewing the trial court's factual findings, we review *de novo* the trial court's ultimate legal ruling on the motion to suppress. *Sorenson*, 196 Ill. 2d at 431.

For the same reasons discussed above, we believe that the trial court properly suppressed the evidence recovered from the defendant following the arrest at his residence. The police entered the defendant's residence without his consent or a warrant. This warrantless search was not justified by the "emergency exception," because the facts in the record did not give the police reasonable grounds to believe that the defendant was injured. Although the officers testified that they went into the defendant's residence based on concerns for his health, the trial court was free to reject this testimony in light of Sarwas's testimony that suggested that the police were more concerned about investigating a possible crime than they were about the defendant's health. See *Gherna*, 203 Ill. 2d at 175. Accordingly, the trial court did not err in granting the defendant's motion to suppress.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and BYRNE, JJ., concur.